**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**VICKI L. COOPER,**

      **Plaintiff,**

  **v.**

**AGC FLAT GLASS NORTH**
**AMERICA, INC.,**

      **Defendant.**

Case No. 2:19-cv-4630
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

**OPINION AND ORDER**

The matter before the Court is Defendant's, AGC Flat Glass North America, Inc. ("Defendant"), motion for summary judgment. (ECF No. 33). Plaintiff Vicki Cooper, ("Plaintiff" or "Cooper") responded, (ECF No. 37), to which Defendant replied (ECF No. 38). For the reasons that follow, the Court **DENIES in part** and **GRANTS in part** Defendant's motion.

**I.**

Plaintiff was born in 1969 and worked for many years in the automotive industry for Defendant. (Cooper Aff. at ¶ 2, ECF No. 37-3). Plaintiff began working for Defendant in July 2011 as a Production Associate and continued to do so until Defendant terminated her employment on March 25, 2019. (*Id.*; Cooper Dep., ECF No. 27, PageID 133–34).

On May 24, 2018, Plaintiff was issued a major counseling with five-day suspension after she violated the Company's lock-out, tag-out ("LOTO") safety procedures. (Corrective Action Notice, ECF No. 27, PageID 494). On Saturday, May 12, 2018, at approximately 10:30 p.m., Plaintiff handed her LOTO key to another associate to remove her lock from the B-84 load cell. *Id.*, 197, 494-495. Plaintiff was at the front of the plant during the key exchange. *Id.* By allowing another associate to take her LOTO key to remove her lock, Plaintiff violated the Company's

LOTO procedures, and in accordance with the Company's progressive discipline policy, Plaintiff was issued a major counseling with five-day suspension. *Id*. As a further result, Plaintiff lost eligibility for bonus pay that quarter. (*See* Steggeman Dep., ECF No. 31, PageID 793–94). The other employee, Alissa Petty, had no previous disciplinary incidents and received a write-up. (Petty Dep., ECF No. 36-1, PageID 1004).

The next month, June 2018, Plaintiff began having issues with Senior Coordinator James Carmen. On three occasions near the start of June, Plaintiff complained to Carmen about the LOTO incident, her desire for training, and smoke breaks. (Carmen Dep., Ex. 41, ECF No. 28, PageID 626–27). That month, Plaintiff also complained to HR that Carmen tried to "run me off the road in the parking lot." (Cooper Dep. at PageID 222). Meanwhile Carmen reported to HR that Plaintiff might be taking an additional smoke break. (Steggeman Dep. at PageID 793–94; Carmen Dep., ECF No. 28, PageID 585).

On June 26, 2018, Plaintiff applied for FMLA leave, which Defendant approved two days later. (Cooper Dep. at PageID 245, 498). According to Jane Dipple, another employee of Defendant, Carmen's treatment of Plaintiff worsened after Plaintiff began to take FMLA leave. (Dipple Aff. at ¶ 7, ECF No. 37-2).

Around this time, Plaintiff went to John Miracle, who worked in HR, and asked what she needed to do to obtain a promotion. (Cooper Dep. at PageID 143–44). Miracle told her to speak with her coordinator. (*Id.* at PageID 144). After several such requests, Defendant had Plaintiff begin shadowing Hunter Price. (*Id.*) While Plaintiff was supposed to be learning from Price, according to Plaintiff, Price was actually learning from Plaintiff. (*Id.* at PageID 145). Price did not like that. (*Id.*) As a result, Price and Plaintiff became combative. (*Id.* at PageID 144).

2

Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC") to inquire about a charge of discrimination against Defendant, but ultimately decided not to file a charge. (*Id.* at PageID 311). Plaintiff explained that, when she communicated with the EEOC, she did not articulate a protected category based-on which Defendant discriminated against her, and only articulated that Defendant was discriminating against her. (*Id.* at PageID 232). Plaintiff states that after she went to the EEOC, "everybody was talking about it." (*Id.* at PageID 317).

Shortly thereafter, on August 9, 2018, there was an incident between Price and Plaintiff. (*Id.* at PageID 200). While Plaintiff was shadowing Price, Price was "pushing buttons" and "getting things more out of whack." (*Id.* at PageID 201). Plaintiff attempted to correct Price's error, causing Price to become very angry. (*Id.*). Plaintiff also became angry, but did not yell, and instead decided to leave the situation. (*Id.* at 201, 203). Though it was alleged that Plaintiff threw a water bottle, Plaintiff explains that the water bottle was already broken and fell off a table. (*Id.* at PageID 204; Miracle Dep., Email Ex., ECF No. 32, PageID 961). Plaintiff ultimately let her coordinator know that the shadowing was not working out and that Price was not willing to train her. (*Id.* at PageID 145).

Four days after this incident, on August 13, 2018, Plaintiff emailed the President of Defendant, Alberto Trevino. (Cooper Dep., Ex. 12, ECF No. 27, PageID 496). Cooper wrote: "Mr. Travino i [*sic*] have been experiencing a great deal of trouble at agcna and we need your help there's so much to explain and i am praying u can call me so i can discuss these issues [Plaintiff's phone number]. Please help[.]" (*Id.*) That day Trevino forwarded the email to Jim Bossley, Vice President of Human Resources. (*Id.*) Trevino informed Bossley of a conversation he had with Plaintiff and asked Bossley for advice on how to reply. (*Id.*) Bossley then set up a meeting at the

3

plant between himself and the HR manager, Brenda Rhodes. (Bossley Dep., ECF No. 30, PageID 721).

On August 14, 2018, Miracle wrote Bossley seeking approval to terminate Plaintiff's employment. (Miracle Dep., Ex. 20, ECF No. 32, PageID 961). The email stated that the request was due to the August 9 incident. (*Id.*) Bossley did not grant Miracle's request. (Bossley Dep. at PageID 723).

Two days later, on August 16, 2018, Bossley traveled to the plant and met with Plaintiff and Rhodes. (*Id.* at PageID 732–33). At this meeting, Plaintiff states that she brought up the issues mentioned above, as well as that she was experiencing anxiety from being bullied. (Cooper Dep. at PageID 137, 139–41).

As a result of this meeting, Defendant offered Plaintiff a transfer. (*Id.* at PageID 230–31). However, Plaintiff was concerned that the transfer would mean a reduction in hours. (*Id.* at PageID 231–36). Plaintiff declined the transfer. (*Id.*)

In February 2019, Plaintiff's FMLA leave expired. (*Id.* at PageID 256–57). Early the next month, on March 6, 2019, Plaintiff called her Production Manager, Jim Brown, shortly before work to request the day off—her son was in the hospital. (*Id.* at PageID 283–85). After a back and forth, Brown stated to Plaintiff: "Just take the day off. It's covered. I'll see you tomorrow." (*Id.* at PageID 289). Plaintiff considered this a scheduled vacation day; Defendant considered it an emergency vacation day. (*See id.* at PageID 180–181). Other employees had similarly taken scheduled vacation days on short notice. (*See* Dipple Aff. at ¶ 14). For an emergency vacation day, as opposed to a scheduled vacation day, the employee is required to call the guard shack and inform them that the employee will not be in, otherwise the regular attendance policy applies. (*Id.* at PageID 180–82). Plaintiff did not call the guard shack. (*Id.* at PageID 295).

4

Though she had been granted the day off, when Plaintiff returned to work the following day Plaintiff was accused of a no-call/no-show and assessed three attendance points. (*See id* at PageID 283–84, 295). These points took Plaintiff to a total of eleven attendance points, enough under Defendant's policy for Defendant to terminate Plaintiff's employment. (*Id.* at PageID 173–74, 547). On March 25, 2019, Defendant held a hearing and terminated Plaintiff. (*Id.* at PageID 306–07, 309).

On July 8, 2019, Plaintiff filed a charge of disability discrimination and retaliation with the EEOC. (Charge, ECF No. 37–3, PageID 1038). On July 31, 2019, the EEOC closed the case and issue Plaintiff a right-to-sue letter. (*Id.* at PageID 1039). Plaintiff filed suit against Defendant in an Ohio court of common pleas, which Defendant than removed to this Court on October 18, 2019. (ECF No. 1). Plaintiff claims that Defendant retaliated against her in violated of the FMLA, otherwise retaliated against her in violation of Ohio and Federal law, and discriminated against her based-on age, gender, and disability, in violation of Ohio and Federal law. (*See generally* Compl., ECF No. 3). Defendant now moves for summary judgment on Plaintiff's claims.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The

burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n*., 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

### III.

#### A. Family and Medical Leave Act Retaliation

The Family and Medical Leave Act, broadly, entitles eligible employees to a certain amount of work-leave within specified parameters. 29 U.S.C. § 2612. It also prohibits employers from interfering with an eligible employee's exercise of this right, and from discriminating against any individual "for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a). Courts analyze claims of retaliation under the FMLA using the familiar *McDonnell Douglas* test. *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012).

Plaintiff must first make out a prima facie case of retaliation. *Id.* at 761. Plaintiff must show:

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the

6

> employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Id.* If Plaintiff establishes a prima facie case, the burden shifts to Defendant to proffer a legitimate, nondiscriminatory reason for its actions. *See id.* at 761–62). The burden then shifts back to Plaintiff to prove that Defendant's proffered reason is pretextual. *See id.*

Defendant first argues that Plaintiff cannot establish her prima facie case because, according to Defendant, Plaintiff cannot establish causation. (Mot., ECF No. 33, PageID 977). Plaintiff submits, among other things, that she took FMLA leave, Defendant knew and started to treat her differently, and that Defendant ultimately terminated her. Plaintiff submits that a reasonable jury could find that Defendant's actions were based on Plaintiff's taking of FMLA leave. The Court agrees that a reasonable jury could, but would not necessarily, so conclude.

From Plaintiff's evidence, a reasonable jury could infer the causal link between Plaintiff's FMLA leave and the adverse employment actions. Defendant points out that Plaintiff was no longer eligible for FMLA leave at the time Defendant terminated her. (Mot., ECF No. 33, PageID 977). Yet, Plaintiff's FMLA leave had only recently expired, and Defendant had been treated more severely after she started taking FMLA leave. Just because Defendant did not terminate Plaintiff until after her FMLA leave expired does not mean that the two cannot have been connected. The close temporal proximity and the poor past treatment are enough for a reasonable jury to find causation. As such, viewed in the light most favorable to Plaintiff, Plaintiff's evidence can establish a prima facie case.

Shifting to Defendant, Defendant proffers that it terminated Plaintiff for violating Defendant's attendance policy. Plaintiff does not dispute that this is a legitimate, nondiscriminatory proffer. Plaintiff does, however, submit that this proffer is pretextual.

There are three ways in which a plaintiff may raise a general issue of fact as to pretext and defeat a motion for summary judgment. *Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 589 (6th Cir. 2002) (applying the *McDonnell Douglas* test in an age discrimination case). A plaintiff could show that: (1) the proffered reasons had no factual basis, (2) the proffered reasons did not actually motivate Defendants' action, or (3) the proffered reasons were insufficient to motivate the action. *Id*. Plaintiff presents evidence that on the day she received three attendance points for the no-call/no-show preceding her termination, she had been granted a vacation day. (Cooper Dep., ECF No. 27, PageID 289). And while Defendant presents evidence that by not calling the security shack, Plaintiff did not follow the technical procedure for emergency vacation days, the parties dispute whether Plaintiff was using a scheduled or emergency vacation day.

There is thus a genuine dispute of material fact. Assuming Plaintiff's assertion is the correct one, a reasonable jury could conclude that Defendant's proffered reason had no factual basis. Alternatively, given the close temporal proximity between the expiration of Plaintiff's FMLA leave and her termination, as well as the evidence that Plaintiff was given that day off, a reasonable jury could conclude that Defendant was looking for a reason to terminate Plaintiff because of the FMLA leave and used this opportunity as pretext to do it. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's FMLA retaliation claim.

### B. Retaliation for Protected Activities[1]

Next, Defendant moves for summary judgment on her claim of retaliation violative of Ohio Revised Code § 4112 and Federal law.[2] (Mot., ECF No. 33, PageID 980; Reply, ECF No. 38,

---

[1] The same analysis generally applies to Plaintiff's claims under Ohio Revised Code § 4112 and the related Federal laws. *Staunch v. Cont'l Airlines*, Inc., 511 F.3d 625, 631 (6th Cir. 2008); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 196, 421 N.E.2d 128, 131 (Ohio 1981). Accordingly, the analysis herein and in the section on discrimination applies the same to Plaintiff's claims under Ohio and Federal law.
[2] Defendant initially focused on Ohio law, as Plaintiff did not produce a right-to-sue letter until her response.

8

PageID 1050). Again, the *McDonnell Douglas* test applies. *E.g.*, *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). Defendant asserts that Plaintiff cannot establish that she engaged in a protected activity, or that Defendant knew of such activity if it did occur, and that there is no evidence of a causal link between a protected activity and an adverse employment action here.

In attempting to establish a prima facie case Plaintiff submits that she engaged in a protected activity when she (1) complained to HR about her treatment at work, (2) attempted to file an EEOC charge, and (3) requested that she receive certain training. (Resp. at 14, ECF No. 37). Plaintiff states that the adverse actions include her five-day suspension after violating the LOTO policy, Miracle's request for Plaintiff's termination, and Plaintiff's termination roughly seven months later. According to Plaintiff, everyone knew that she had complained to the EEOC. And Plaintiff submits that a reasonable jury could infer causation. (Resp. at 15–16, ECF No. 37).

Regarding the adverse actions, the Court will assume each of the stated actions constitute an adverse action except Miracle's request for Plaintiff's termination. An adverse action is a "materially adverse change in the terms or conditions" of employment. *Laster*, F.3d at 727 (quoting *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (quoting *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742, 761 (1998). Adverse employment action "requires an official act of the enterprise, a company act." *Id.* (quoting *Burlington*, 524 U.S. at 762). Miracle's request for Plaintiff's termination does not meet that definition. Importantly, Miracle's request did not actually result in any *action* taken against Plaintiff. It amounted to an opinion, devoid of action. And while Plaintiff was ultimately

9

terminated, that did not occur for seven months after Miracle stated his opinion. Thus, while the actual termination is an adverse act, Miracle's recommendation is not.

With this exception, the Court otherwise assumes that Plaintiff has made out the first three elements of her prima facie case, because Plaintiff has not presented evidence of a causal link. Plaintiff submits that the Court can infer a causal link. (Resp. at 15–16, ECF No. 37). This time, the Court does not agree.

The first asserted adverse action, the LOTO suspension, occurred before Plaintiff attempted to file an EEOC charge or otherwise complained. And, Plaintiff has not presented evidence supporting a causal link between those actions and Plaintiff's requests for specific training. Similarly, Plaintiff has not presented evidence connecting her protected activities to her termination. In contrast to Plaintiff's FMLA retaliation claim, here the temporal proximity is distant, and there is no other evidence supporting causation.

Plaintiff's suggestion that a jury could infer causation hits a critical snag. That inference would need to be based only on evidence that Plaintiff engaged in a protected activity, the inference that Defendant knew, and the evidence that Defendant took an adverse act. There must be something more if a plaintiff is to establish causation. Otherwise, proof of the first three elements of a prima facie case would inherently be proof of all four elements. It would in practical effect eliminate the need to prove causation. Here, the evidence does not establish, or even suggest, a causal link between Plaintiff's non-FMLA related protected activities and Defendant's adverse employment acts.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's non-FMLA based retaliation claims.

10

### C. Discrimination

Finally, Defendant moves for summary judgment on Plaintiff's age, gender, and disability-based discrimination claims under Ohio and Federal law. This claim is also analyzed under a variation of the *McDonnell Douglas* test. (*E.g.*, *Blizzard v. Marion Technical College*, 698 F.3d 275, 283 (6th Cir. 2012). This time, to make out her prima facie case, Plaintiff must "present evidence that (1) she was a member of a protected class, (2) she was subject to an adverse employment action, (3) she was qualified for the position, and (4) others, similarly situated and outside the protected class, were treated differently." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 653 (6th Cir. 2012) (citation omitted). Defendant submits that Plaintiff cannot satisfy the fourth element of her prima facie case. (Mot., ECF No. 33, PageID 983–84). Regarding her age discrimination claim, Plaintiff responds that she was treated differently than Alissa Petty, the other employee involved in the LOTO incident.

To be considered similarly situated, the employees must be similarly situated in "all relevant respects." *Ercegovish v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). In *Mitchell*, the Sixth Circuit held that:

> to be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct *without such differentiating or mitigating circumstances* that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (citation omitted) (emphasis added).

To support Plaintiff's age discrimination claim, Plaintiff identifies only Alissa Petty. The evidence does not establish that Plaintiff and Petty were similarly situated. The evidence does reveal that this was Petty's first disciplinary incident. (Petty Dep., ECF No. 36-1, PageID 1004). In contract, Plaintiff had previously been disciplined at least once. (Cooper Dep., ECF No. 27,

11

PageID 186–194, 488–495). The difference in Plaintiff's disciplinary history distinguishes the two, with Petty's previously clean record serving as a mitigating factor. Plaintiff offers no other comparable individuals. As such Plaintiff cannot show that she was treated differently than a similarly situated individual based on age, and this claim cannot survive.

Plaintiff's claims of gender and disability-based discrimination fail for the same reason. Plaintiff has not offered any comparable employees to support these claims. Instead, Plaintiff relies on the general proposition that she "was treated differently than younger male employees as well as non-disabled employees throughout her employment." (Resp. at 16, ECF No. 37) (no citation provided). General propositions such as this are insufficient to support a prima facie case of discrimination. Instead, Plaintiff must offer "specific facts" to establish that she and another are similarly situated. *Parries v. Makino, Inc.*, 148 Fed. Appx. 291, 297 (6th Cir. 2005); *see also Mitchell*, 964 F.2d at 583–84. Typically, the analysis under this rule concerns whether the plaintiff showed that the identified individuals shared similarities, such as the same supervisor. *See Parries*, 148 Fed. Appx. At 297. Here, Plaintiff has not even identified particular individuals.

Accordingly, Plaintiff has not met her burden of proof, as she has not proffered any similarly situated individuals. Defendant is thus entitled to summary judgment on Plaintiff's discrimination claims.

### IV.

For the reasons stated above, the Court **DENIES in part** and **GRANTS in part** Defendant's motion for summary judgment. (ECF No. 33).

**IT IS SO ORDERED.**

**9/22/2021**                                                               s/Edmund A. Sargus, Jr.
**DATED**                                                                    EDMUND A. SARGUS, JR.
                                                                              UNITED STATES DISTRICT JUDGE